IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

ELECTRONICALLY FILED
Mar 18 2026
U.S. DISTRICT COURT
Northern District of WV

SUTTON CAPITAL PARTNERS, LLC,

Plaintiff,

v. CIVIL ACTION NO. 1:26-cv-27 (Kleeh)

WILDWOOD PROPERTY MANAGEMENT, LLC, WILDWOOD CONSTRUCTION MANAGEMENT, LLC and RICHARD CROSBY,

Defendants.

# Complaint

Plaintiff, Sutton Capital Partners, LLC ("Sutton Capital") by counsel, for its Complaint states as follows:

## Parties

1. Plaintiff Sutton Capital Partners, LLC, is a North Carolina limited liability company, with its sole member, Cristina Contento, residing at 1317 Brook Arbor Drive, Cary, North Carolina 27519.

2. Defendant Wildwood Property Management, LLC ("Defendant Wildwood Property") is a West Virginia limited liability company with its sole member, Richard Crosby, residing at 1103 Morgantown Avenue, Fairmont, West Virginia 26554.

3. As of the filing of this Complaint, Defendant Wildwood Property remains out of compliance with the West Virginia Secretary of State for failing to file an annual report.

4. Defendant Wildwood Construction Management, LLC ("Defendant Wildwood Construction") is a West Virginia limited liability company with its members Charissa Kelley and Richard Crosby residing at 1103 Morgantown Avenue, Fairmont, West Virginia 26554.

5. On December 29, 2020, the West Virginia Secretary of State revoked Defendant Wildwood Construction's license to conduct business based on Defendant Wildwood Construction's failure to file its annual report.

6. Defendant Richard Crosby ("Defendant Crosby") is a West Virginia resident who resides at 1103 Morgantown Avenue, Fairmont, West Virginia 26554.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists amongst the parties and the amount in controversy in this matter exceeds $75,000.00 exclusive of pre- and post-judgment interest.

8. Because Defendant Wildwood Property and Wildwood Construction are West Virginia limited liability companies whose members reside in West Virginia, this Court has personal jurisdiction over each of them.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and §1391(b) because each Defendant is a resident of Marion County, West Virginia, and because the transactions and events giving rise to Sutton Capital's claims occurred Harrison County, West Virginia, and involve property located in Harrison County, West Virginia.

## Factual Allegations

10. On or around April 2023, Sutton Capital inquired about purchasing certain real property located at 1 Bruce Street, Clarksburg, West Virginia 26301 (hereinafter, the "Bruce Street Building") from Sandfork Investment Group, LLC ("Sandfork Investment Group").

11. At this time, the Bruce Street Building consisted of nine (9) rental units.





12. To effectuate the purchase of the Bruce Street Building, on or around July 21, 2023, Sutton Capital entered into a loan ("First Loan") with Creative Financing Solutions, LLC ("Creative Financing").

13. Under the First Loan, Creative Financing loaned Sutton Capital $400,000.00.

14. Under the First Loan, Sutton Capital agreed to pay Creative Financing 11 interest only payments of $3,663.33 with all remaining principal and interest due on July 21, 2024.

15. Contemporaneously to the First Loan, Sutton Capital purchased the Bruce Street Building from Sandfork Investment for $200,000.00.

16. Out of the July 21, 2023 closing, Sutton Capital received $219,172.33 in cash that Sutton Capital intended to use for renovations to the Bruce Street Building.

17. Sutton Capital purchased and acquired the Bruce Street Building for the purpose of producing income by renting out the rental units to various tenants.

18. At the time Sutton Capital acquired the Bruce Street Building, six (6) of the nine (9) rental units were occupied and producing rental income.

19. To effectuate its planned renovations, Sutton Capital evaluated Defendants Wildwood Property and Wildwood Construction as a potential contractor for the renovations to the Bruce Street Building ("Project").

20. Defendant Crosby, on behalf of Defendant Wildwood Property, provided Sutton Capital an initial budget of $250,000.00 to perform the renovations for the Project.

21. In attempting to secure the contract with Sutton Capital, Defendant Crosby emphasized his experience and detailed previous work he performed in and around Harrison County.

22. In fact, on Defendant Wildwood Property's website, Defendant Crosby stated:

> "
> *We feel that it is important to get things done right the first time which is why we create a custom plan for each client. As a fully licensed and insured General Contractor, I understand the importance of hiring someone that you can trust. We explore every avenue when it comes to minimizing your budget while creating a space unlike any other. It is our pleasure to serve our community and fellow Mountaineers.*
>
> Owner
> Richard Crosby
> General Contractor
> West Virginia Native

23. On its website, Defendant Wildwood Property represented to offer both construction services, rental management, rental offering and property management to customers.

24. As the Bruce Street Building represented Sutton Capital's first foray into West Virginia, Sutton Capital relied on Defendants' representations that Defendants possessed the experience, expertise and the resources to timely complete the renovation work and maintain the tenancy of the families in the Bruce Street Building.

25. Upon information and belief, Sutton Capital is informed, believes and, therefore avers, that Defendants misrepresented their experience and abilities in order to persuade Sutton Capital to award them this Project.

26. Sutton Capital relied on Defendants representations in selecting Defendants to perform the work on this Project.

27. Defendants Wildwood Property, Defendant Wildwood Construction and/or Defendant Crosby agreed to perform the work on the Bruce Street Building while occupancy of existing tenants was maintained.

28. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers that Defendant Wildwood Construction performed the renovations for the Project as the only entity with a general contractor's license.

29. The West Virginia Secretary of State revoked Wildwood Construction's authority to conduct business on December 29, 2020 for failing to file a registered report.

30. Wildwood Construction's contractor license expired on July 26, 2024.

31. As of the filing of this Complaint, none of the Defendants appear to have a general contractor's license.

32. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers Defendants began work on the Project on or around July 31, 2023.

33. Defendant Wildwood Property periodically invoiced Sutton Capital for its services.

34. Sutton Capital paid the costs for certain materials for the Project, which totaled at least $42,499.70.

35. Sutton Capital paid the costs for certain equipment rental for the Project, which totaled at least $4,163.60.

36. Sutton Capital paid the costs for dump fees associated with the Project, which totaled at least $18,162.71

37. Because Sutton Capital was in North Carolina, it relied on Defendants to accurately invoice their work and timely progress the Project.

38. From July 31, 2023 through August 28, 2024, Defendant Wildwood Property sent Sutton Capital 16 invoices totaling $134,409.13 for the work Defendants performed on the Project.

39. The work failed to progress as expected when Sutton Capital entered the First Loan.

40. On December 31, 2024, Sutton Capital refinanced the First Loan with Creative Financing (the "Refinanced Loan").

41. Under the Refinanced Loan, Sutton Capital borrowed $470,000.00 at an annual interest rate of 11.49%.

42. Under the Refinanced Loan, Sutton Capital agreed to make interest only payments through October 1, 2025, when the Refinanced Loan matured.

43. The $470,000.00 paid to Sutton Capital paid the $403,61.20 due on the First Loan along with closing costs of $25,312.03 and $41,074.77 in cash to Sutton Capital.

44. At the time Sutton Capital entered the Refinanced Loan, the Bruce Street Building valued at $610,000.00 in as is condition with an increase to $1,150,000.00 upon completion of the anticipated renovations.

45. With the extension under the Refinanced Loan, Sutton Capital believed and anticipated Defendants completing the Project to allow Sutton Capital to recoup its investment in the Bruce Street Building.

46. Sutton Capital's relationship with Defendants materially worsened following the Refinanced Loan.

47. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers, that Defendants performed little and subpar work on the Project after the October 21, 2024 invoice.

48. Defendant Wildwood Property stopped its periodic invoicing to Sutton Capital concerning the progression of the work.

49. Instead, on August 4, 2025, three months before maturity on the Refinanced Loan, Defendant Wildwood invoiced Sutton Capital $93,913.65 for labor it claimed to perform up and through February 6, 2025.

50. Defendant Wildwood Property, through Defendant Crosby, insisted that Defendants needed significant additional funds, nearly double the budget, to conclude the work on the Project.

51. To justify the $93,913.65, Defendant Wildwood Property enclosed timecards for its purported labor.

52. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers that the timecards misrepresented the actual work performed the Project.

53. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers that Defendants lacked a construction license to perform the work under its August 4, 2025 invoice because Defendants lacked any construction license.

54. Given the requests for increases and sizeable August 4, 2025 invoice, Sutton Capital began questioning Defendants' work.

55. Defendant Crosby became increasingly hostile and combative.

56. Defendants made threats to Sutton Capital, including, but not limited to, filing a meritless mechanic's lien on the Project.

57. Eventually, Defendants abandoned the Project entirety.

58. After Defendants abandoned the Project, Sutton Capital further investigated and learned that, in addition to overstating the work performed, the little work conduct during this period was poor quality and below acceptable standards.

59. Because of the demolition work Defendants performed, during the majority of the Project, Sutton Capital lacked the ability to rent any of the nine units in the Bruce Street Building.

60. The lack of rentable units deprived Sutton Capital of potential income to pay the First and Refinanced Loans.

61. The current state of the Project has left Sutton Capital exposed to the Refinanced Loan with limited resources to finish the Project.

## Count 1 – Fraud
## (Defendants)

62. Sutton Capital re-states and incorporates all the preceding paragraphs of this Complaint as if the same were fully stated, verbatim, herein.

63. Defendants represented that they possessed the level of experience, expertise and recourses to timely and professionally renovate the Burce Street Building.

64. Defendants misrepresented their abilities by:

a. performing work without a West Virginia's contractor license.

b. invoicing for work not actually performed.

c. misrepresenting the quality of their work.

d. charging Sutton Capital excessively the work performed.

65. Sutton Capital justifiably relied on Defendants' representation in selecting Defendants to perform the work on the Project.

66. As a direct and proximate result of Defendants' fraud, Sutton Capital has suffered damages well in excess of the jurisdictional threshold of this Court.

**Count 2 – Breach of Contract**
**(Defendant Wildwood Property)**

67. Sutton Capital re-states and incorporates all the preceding paragraphs of this Complaint as if the same were fully stated, verbatim, herein.

68. On or around July 31, 2023, Sutton Capital contracted with Defendant Wildwood Property to renovate the Bruce Street Building.

69. Defendant Wildwood Property initially provided a budget to Sutton Capital of $250,000.00 with a plan to complete the Project prior to the maturity of the First Loan.

70. In performing its work, Defendant Wildwood Property agreed to not displace the tenants.

71. The work progressed slower than anticipated on the Project.

72. From July 31, 2023 through August 28, 2024, Defendant Wildwood Property sent Sutton Capital 16 invoices totaling $134,409.13 for the work Defendants performed on the Project.

73. The failure to timely complete the work led Sutton Capital to refinance the First Loan and extend the maturity date to October 1, 2025.

74. Following this refinancing, Defendant Wildwood Property performed little work on the Project.

75. Notwithstanding the lack of work, Defendant Wildwood Property, on August 4, 2025, Defendant Wildwood Property invoiced Sutton Capital $93,913.65 for labor it claimed to perform up and through February 6, 2025

76. The invoice materially breached the contract because Defendant Wildwood Property failed to perform the work claim in this invoice.

77. The invoice materially breached the contract because Defendant Wildwood Property charged in excess for the work it actually performed.

78. The invoice materially breached the contract because Defendant Wildwood Property poorly performed its actual work.

79. Defendant Wildwood Property materially breached the contract by abandoning the Project prior to completion.

80. Sutton Capital performed its obligations to Defendant Wildwood Property by paying the invoices up and until Defendant Wildwood Property materially breached.

81. As a direct and proximate result of Defendants' breaches of the Parties' agreement, Sutton Capital has suffered, and continues to suffer, damages well in excess of the jurisdictional threshold of this Court.

**Count 3 – Negligence**
**(Defendants Wildwood Construction and Defendant Crosby)**

82. Sutton Capital re-states and incorporates all the preceding paragraphs of this Complaint as if the same were fully stated, verbatim, herein.

83. Defendant Wildwood Construction and Defendant Crosby had a legal and professional obligation to perform the renovation and restoration work on the Bruce Street Building in a reasonable and workmanlike manner.

84. Defendant Wildwood Construction and Defendant Crosby failed to meet the established standard of care in performing the renovation and restoration work on the Bruce Street Building, as the Bruce Street Building and the rental units within it are now uninhabitable as a direct and proximate result of Defendants' negligent work.

85. Defendant Wildwood Construction and Defendant Crosby further failed to meet the established standard of care by failing to acquire and/or maintain a valid contractor's license while performing the work on the Bruce Street Property.

86. Defendant Wildwood and Defendant Crosby further failed to meet the established standard of care by failing to acquire and/or maintain the requisite building and/or construction permit(s) as required by the City of Clarksburg, West Virginia.

87. Defendant Wildwood Construction and Defendant Crosby further failed to meet the established standard of care by systematically and repeatedly over-charging for its work, which only resulted in the Bruce Street Building being rendered uninhabitable.

88. As a direct and proximate result of Defendants' negligence, Sutton Capital has suffered, and continues to suffer, damages well in excess of the jurisdictional threshold of this Court.

## Count IV – Piercing the Corporate Veil
## (Defendants Wildwood Construction and Wildwood Property)

89. Sutton Capital re-states and incorporates all the preceding paragraphs of this Complaint as if the same were fully stated, verbatim, herein.

90. At all relevant times hereto, Defendant Crosby exercised complete domination and control over Defendants Wildwood Construction and Wildwood Properties.

91. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers that Defendants Wildwood Construction and Wildwood Properties were operated as mere

instrumentalities and alter egos of Defendant Crosby, with no meaningful separation between corporate and personal affairs.

92. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers that Defendants Wildwood Construction and Wildwood Properties failed to observe the formalities required of limited liability companies including, but not limited to, remaining separate entities.

93. Both Defendant Wildwood Construction and Wildwood Properties operate from the same location.

94. Both Defendant Wildwood Construction and Wildwood Property remain out of compliance with the West Virginia Secretary of State.

95. Upon information and belief, Sutton Capital is informed, believes and, therefore, avers that Defendant Crosby simply refers to these entities as Wildwood, despite that they offer different services.

96. Defendant Crosby's misuse of the corporate form was undertaken to perpetrate fraud, accomplish injustice, which proximately caused harm to Sutton Capital.

97. Accordingly, equity requires that the corporate veil be pierced, and that the Defendant Crosby be held personally liable for the debts, obligations, and damages caused by Defendants Wildwood Construction and Wildwood Property.

WHEREFORE, Sutton Capital demands judgment in its favor against Defendants Wildwood Property Management, LLC, Defendant Wildwood Construction Management, LLC and Defendant Richard Crosby, in an amount in excess of $283,760.65, together with attorneys' fees, court costs, punitive damages and interest as well as any other relief this Court may deem appropriate.

SUTTON CAPITAL PARTNERS, LLC

By Counsel,

/s/ Patrick C. Timony________________
Patrick C. Timony (WVSB # 11717)
Zachary J. Rosencrance (WVSB # 13040)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25325-1386
Telephone: (304) 347-1100
Facsimile: (304) 343-3058
ptimony@bowlesrice.com
zrosencrance@bowlesrice.com
*Counsel for Plaintiff*